Thank you. Good morning. My name is Mark Vermoen. I represent Sergei Korolev. He's a 57-year-old prisoner who's serving a life plus 35-year sentence based on a fight that he got into. Someone was injured. No one was killed. I'm here today to ask the court in its de novo review of his case to, I'm going to focus on whether in the court's de novo review of the case, equitable tolling should be applied to toll 29 days so that a federal judge can I'm going to ask the court to extend equitable tolling in this case, in this individual case, based on the facts and the history of this case. To sort of cut to the chase, the description of the argument is that he suffers under two things. One, a mental impairment, correct? Well, that is a focus, yes. And his native language is Russian. That's also a factor. And he was without counsel for a period of time. That's also a factor. Can we get right to causation and tell us how his mental impairment, his language difficulties or the lack of counsel affected his ability to comply with the ETHPA one-year statute? Given all those factors and given his physical, mental, incarcerated makeup, it is literally impossible for him to be able to do that or to do that calculation. I'd like you to tell the panel how and why, not just that those things impacted his ability to file, but how they did. I will focus on that. So, number one, his GAF, his global assessment of functioning, is so low that he is seriously impaired. He does not have the ability to think, to analyze, to put things into perspective or to put things on paper to understand what he would have to do, quite frankly, in the everyday functions of life, let alone trying to calculate or discern what is the ETHPA deadline or the filing. But he had the assistance of counsel, though, didn't he? He did, to a limited degree. And that's actually my focus in the argument here as well. I don't want to abandon that, but that is my focus in the argument because I think that it's important to understand the history of that 30-day, 29-day question. In November, December of 2005, what was the law of the case? What was the law of tolling in the Ninth Circuit and in California? We had federal precedent, Bunny, out of 2001. That made very clear under Bunny that there was 30 days that tolled between the time that the California Supreme Court issued its denial of the petition in state court until a petitioner had to file in federal court. Based on California law. Based on California law, exactly. And there was a change. I think you're alluding to the change in the Rule 29 or Rule 24, rather, that got amended to Rule 29.4, and I will address that as well. Bunny comes down. Three cases from the Ninth Circuit come down in 2002 reaffirming Bunny. The case of Allen v. Lewis, that was an en banc decision. The case of White v. Klitschke, both the majority and the dissent in that case reaffirmed Bunny, acknowledged and reaffirmed Bunny. Smith v. Duncan also came down, and this was in 2002, reaffirming and following Bunny. What happened then in the time between that 2001 Bunny, 2002 Ninth Circuit opinions and 2005, November, December filing? In that interim, the rule change that you alluded to, Your Honor, happened. Did any court pick that up? Did any court acknowledge that? Did any – was there anything in Bunny in that yellow flag, that red flag that gave anyone notice other than the change of the statute? There was not. In fact, in the two months – it might be two or three months – in the two or three months before filing in November, December 2005, there were three court decisions, one out of the northern district and two out of the eastern district, each of which analyzed this exact question, the tolling question, and each of which analyzed it under Bunny and followed Bunny, said this is what the precedent is, this is what the rule is. That was what one could see if one's looking at the law, unless you know about that amendment. Are you telling us that this was a lawyer error? I'm telling you that there was in part lawyer error, yes. Well, under the Supreme Court's Holland case from Monday, why wouldn't this be simply an error in calculating the right deadline under California State law, a garden variety, attorney negligent, not an extraordinary circumstance to toll it? That's the crux of the question. If you find that that is so, then we lose. But Harris says otherwise. Tell me why that's not so. Harris says otherwise. Harris said otherwise. Harris, this circuit's decision, talked about equitable tolling and talked about it in connection with attorneys or parties' reliance on court precedent. Harris dealt with Ninth Circuit court precedent itself. Harris also talked about Plyler v. Ford and the principles of equitable tolling. Plyler v. Ford was a little bit different in that Plyler v. Ford involved a litigant that relied on, in good faith, the district court's statements to him about the time that he had to file a petition, slightly different procedural context. But the principles of Plyler v. Ford and the principles of Harris that apply to this case are that a party's good faith reliance on existing court precedent or a court's good faith reliance on existing court precedent is a good faith reliance on the principle of equitable tolling and distinguishes that case, distinguishes those cases from mere negligence or mere oversight or mere mistake. And that's what we have here. That's exactly the crux of the question here. There was reliance on those. And in retrospect, it was misplaced. Because in retrospect, if I'm writing a law school exam and I say, you know, what governs just under the pure statutory construction, 29-4 governs. But that's where you have to look at. You have to go beyond that. And that's what equitable tolling is all about. And that also is what Holland discussed in a more general fashion. But that's also what Holland discussed when the Supreme Court issued its decision just this last Monday. It talked about, and remember, this was a 6-2 decision, 7-2 decision if you include Justice Alito's concurrence. They talked about the exercise of the Court's equitable powers is on a case-by-case basis. That's what I'm asking you to do here. I haven't seen this situation before. In all the research, in all talking with my colleagues, I haven't seen this. So case-by-case. Were you the attorney who filed the Federal habeas? Yes. I and co-counsel. Okay. When did you take in the case? When were you retained? Boy, I can't remember, Your Honor. Let me try this. I did have involvement in the State court case. Let me try this question. If you had filed a Federal habeas petition within, let's say, a week of the time you were retained, would we be having this discussion? No. And Harris talks to that, too. Harris speaks to that very specifically in saying that the fact that a Petitioner could file a petition at a certain point of time is not dispositive. The critical fact is that the Petitioner or counsel relied in good faith on court precedent, court's statements in determining when to file. So we could have, and Lord knows I wish I would have, filed a petition and asked the court to hold it in abeyance under Rines v. Weber. If we had done that, then we wouldn't be – I wouldn't be before you today. But the irony of that is that if we had done that, we'd be in the exact same position as we were today. We would have or could have filed within that 30 days, which is a typical period of time that the district court gives you to file following the Supreme Court, California Supreme Court's denial of the petition. We would have been in the exact same position as today. Harris speaks to that very specifically. And being in the same position, in the exact same position, the results should be the same. It would be equitable to do that. Is the fact that you only had one day after the denial of the State petition, although you thought you had 30 days, is that material? Could you have filed within one day if you were aware of the proper filing deadline? Oh, boy. I have to try to think of what I was doing in November and December of 2005. And I'm sorry that I can't answer that question. But again – But you were – you or your firm was able to help Mr. Koroleff during that period? We knew that we had a short period of time to file. We thought we had the 30 days. I'm going to reserve the last few seconds that I have, if I may. You may. Thank you. Can I ask a question? And I don't want to eat into your time. Can you tell us in one or two bullet points what your client's position is on the merits? Oh. What's his – tell me what his two best arguments are on the merits. His two – I'm going to have to reserve that, Your Honor. I really – I'm sorry. I've been focusing on the procedural aspects, given the posture of the case. That's fine. My apologies. Good morning, Your Honor. Peggy Rufrafor, Respondent. I'd like to address the Court's question directly about causation, which is that it's clear in this case that Mr. Koroleff was represented by counsel or at least assisted by counsel for the entire state habeas and federal habeas proceedings. So as a result of that, any alleged infirmities in his mental or language deficiencies would have to be very specific in order to actually cause his attorney to file the petition late. Do we know when he had counsel? Yes. For the federal aspect as opposed to the state? In other words, when he got counsel, was counsel for all purposes or counsel just for the state? Apparently not. But they took the case on for the federal proceedings as a pro bono matter at first until they were paid and then actually substituted in just a few weeks after the federal petition was actually filed. But they clearly understood that the federal petition needed to be filed very quickly and, in fact, say in their declaration that they started to prepare the federal petition right away. So as far as the not the technical representation, but the assistance of counsel, he was assisted by counsel for this entire time period. Now, I think it's important to note that counsel were hired on September 16, 2004, to file the state habeas petition, and they were able to identify and research and draft the entire petition in just 22 days, and they filed it on the last day of the limitation period. And during that time, that's really the relevant time here, because then what they filed in federal court was the identical petition. So the question is, was there some problem with the Petitioner's personal attributes that prevented them from discovering those claims timely? Dr. Veenstra, could you comment on that later in the Well, Your Honor, the district court had a second comprehensive approval. But from the beginning of that evidence hearing period, their final assessment was that that was provable. The district court already gave them the second bite at the apple. There was a whole second round of briefing. There was no hearing in district court, correct? There was no hearing, but there was a second round of briefing where the You'll do a lot better with me by listening to the question and responding to it. If you can say yes or no, just say yes or no. There was no evidentiary hearing before Judge Chesney, correct? There was not. Okay. My question is, what harm would befall the State or your client from having an evidentiary hearing? It would be totally unnecessary. The Petitioner has already had two opportunities, three if you count in this Court, to try to allege some causation. The district court Judge Chesney has never seen Mr. Coroleff, correct? But that is correct. Never heard him testify? Correct. Has made no factual findings on connecting either his mental impairment or his language difficulties to the ability of his lawyer to file, right? Well, I don't think that's entirely true. She hasn't personally seen him, but she has had the opportunity to discuss causation, that connection. And they didn't even comply with the allegation proceeding. They haven't even met that threshold of alleging what the causation could be, much less getting to the point where we need to actually bring him in and see him in person. First, you have to say, here's how it would have affected the ability to file. And all they've done is have these boilerplate allegations about that he is, in fact, mentally impaired and has these language disabilities, which, you know, it's we haven't conceded that, certainly. He was an international businessman with companies all over the world and was able to put together a murder kit and go and try to kill the person that he owed money to. So that's unclear. But it's unnecessary and irrelevant. And he's already had two opportunities to try to say, here are at least the allegations of why it caused me, the attorney, to file late, and he's fallen down both times. Now, it would have to be very specific, because they filed this petition in the court. Here's the petition, full of legal citations, many, many claims, with two volumes of exhibits. That's what they were able to do within that 22-day period. And in their declaration, they admit that Mr. Korolev was able to provide them some assistance. I take it your response to the questions I've asked you to boil it to two sentences is, although the State cannot identify any specific prejudice from having an evidentiary hearing, it's unnecessary on this record. Is that your position? Yes. Although the prejudice, of course, would be that we have gone through the regular procedure and then some for the motion to dismiss as untimely. And so to remand for a further evidentiary hearing would certainly consume a huge amount of time and resources for the State. And so we would be prejudiced in that sense. I mean, this is a fairly ordinary case where we file the motion to dismiss and they respond, and then they have their second chance to respond with specific allegations. To file an amended pleading, right? Specifically addressing the issue of causation. That's what Judge Chesney said. She said, I doubt you're going to be able to show this, because it was clear that he was represented by counsel and you filed everything. But I'll give you another round to do that. And at that point, they filed more papers, but again, with no specific allegations saying, on this day we had difficulty, on this day we discovered the claim, nothing like that. It's just boilerplate and allegations about his alleged underlying problems. So to continue this litigation, yet again, would be unnecessarily to drag it on when they've had every opportunity to explain why there was a problem. Is your argument here a lack of diligence under the Holland standard of diligence in extraordinary circumstances? Or are you arguing, are you conceding diligence here? Well, diligence is the Petitioner's diligence, the Petitioner's own diligence. I don't think that really comes into play one way or another in this case, because the focus would be more on the extraordinary circumstances. So you're not arguing then that the failure to calculate the filing deadline correctly points to a lack of diligence? I don't really see how that comes into play in the diligence problem. I think it's more the extraordinary circumstances. Can I follow up on that? Yes. If the panel, if, here follows a hypothetical question. If the panel were to conclude, as you have argued, that Korolev's mental impairment and language difficulties did not impact in any sort of substantial way his lawyer's ability to timely file under the AEDPA 1-year, and we were looking purely at the lawyer thinking that Bunny was still in effect when it was, the underpinnings of it were gone, what would be your position on that? My position on the Bunny issue is that, first of all, the equitable tolling argument as to Bunny is waived, because that was raised for the first time in the reply brief in this Court. Let's assume we get past that. Okay. Well, then there are two aspects to it. One is that they argued all up until that time that it was simply, there should be statutory tolling, and then separately for the first time, suddenly they said they actually chose their strategy based on Bunny. Is it your argument that a lawyer who misinterpreted Bunny's availability of an extra 30 days, for lack of a better description, cannot be taken into consideration in determining whether there was equitable tolling? I wouldn't say it could never be taken into consideration, but I think that the time Should we take it into consideration? Not in this case, because the timing of this case is such that the law had changed years before anything happened in this case, and that's what distinguishes this case from Harris v. Carter. In Harris v. Carter, the law at the time of the State habeas petitions was in his favor. Later it changed. The Court said in that circumstance it's fair to give him equitable tolling. In this case, the law changed in 2003. January 1, 2003, that law take effect. And counsel admits they knew about the law. They have admitted we knew that the California law had changed, and yet they're It's a hypertechnical reading. Is that admission in the record? That is in their first opposition to the motion to dismiss at page 5. That's document 24 in the record. And you're over time if you want to wrap up your sentence. My sentence is that I think Lawrence v. Florida absolutely controls in this case which says that a mere miscalculation does not warrant equitable tolling. And I think that is completely affirmed by Holland v. Jackson. And at most in this case, there was a miscalculation. Your Honor, the claims that are the most important, I think, are the claims regarding incompetency, claims regarding jury issues, which includes jury instruction and also jury's determination of facts in that procedure, and also the fact that Mr. Korolev was deprived of witnesses at the very hand of Mr. Chijik, who was the putative victim in this case. Diligence, Your Honor, Holland speaks to diligence. It talks about not absolute diligence. It talks about the language in diligence that I put into my letter yesterday, my Rule 28J letter, speaks to that. Harris v. Plyler, they are not on all fours with this case. They are not on all fours with each other. There is no case that is on all fours with this case. The principles of Harris and Plyler apply directly to this case. Thank you. My time is up. Thank you, counsel. I appreciate the argument. The case is submitted.
judges: Tymkovich, Hawkins, Fisher